IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| RICHARD CARTER, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 08-0835-CV-W-ODS |
| ) | |
| HIGH COUNTRY MERCANTILE, ) | |
| INC., et al., ) | |
| ) | |
| Defendants. ) | |

ORDER AND OPINION COMPELLING COMPLIANCE WITH PLAINTIFF'S
SUBPOENAS AND DIRECTING THAT SUBPOENAED EMPLOYEES BE DEPOSED

Plaintiff has issued subpoenas to certain employees of the United States Department of Agriculture ("USDA") to secure their presence at depositions. The USDA directed its employees not to honor the summons and has asserted a power or privilege bestowing it with the ability to take this action. A telephone conference was held on June 30, 2009, and the parties were permitted to submit written position papers in advance of the conference. After the conference the Court directed the parties to provide additional briefing. Having considered the parties' position papers, oral arguments, and briefs, the Court concludes the subpoenas should be enforced.

I. BACKGROUND

The case involves various participants in the Nonfat Dry Milk Program ("NDMP") initiated by the United States Department of Agriculture in 2003. The Program was administered by a public corporation, the Commodity Credit Corporation – specifically, one of its divisions in Kansas City, Missouri (collectively, the "CCC"). In some cases, CCC provided nonfat dry milk directly to drought-afflicted states for distribution. In other cases, CCC sold the milk to private companies in those states, who then sold it to those who were eligible to purchase it. In August 2008, Plaintiffs asserted a claim against the

USDA under the Contract Disputes Act, asserting they were intended third-party beneficiaries of the program and that the USDA had breached obligations owed to them. The status of that case has not been revealed to the Court. In December 2008, Plaintiffs filed suit, *inter alia*, against the United States and various employees and officials pursuant to both the Federal Tort Claims Act and <u>Bivens v. Six Unknown Federal Narcotics Agents</u>, 403 U.S. 388 (1971). Two of those individuals were Carol Verser and Robert Walsh, both of whom are employees of the Farm Services Agency ("FSA"), a part of the USDA that played a role in the administration of the NDMP. That case was dismissed without prejudice on June 25, 2009.

In the case at bar, the sole remaining defendant is High Country Mercantile Inc. ("High Country"), a seller in the secondary market. Plaintiffs allege High Country violated their civil rights and breached contracts. In the course of discovery, Plaintiffs have attempted to depose Verser and Walsh. As noted, the USDA has directed Verser and Walsh not to comply.

## II. DISCUSSION

The USDA starts by relying on regulations promulgated pursuant to 5 U.S.C. § 301. The statute permits administrative agencies to

> prescribe regulations for the government of [the] department, the conduct of its employees, the distribution and performance of its business, and the custody, use and preservation of its records, papers, and property. This section does not authorize withholding information from the public or limiting the availability of records to the public.

Pursuant to this statutory grant of authority, the USDA has promulgated a series of regulations. The present dispute focuses on 7 C.F.R. § 1.214, which applies when a USDA employee is "served with a valid summons, subpoena or other compulsory process" requiring them to appear "on behalf of a party other than the United States in a judicial or administrative proceeding in which the United States is not a party . . . ." The regulation proceeds to bar the employee's compliance unless authorized by "the head

2

of his or her USDA agency, with the concurrence of the General Counsel, based upon a determination that such an appearance is in the interest of the USDA." 7 C.F.R. § 1.214(b)(1). The regulation sets forth a non-exclusive list of factors to be considered in deciding whether compliance with otherwise lawful subpoenas is in the USDA's interest. Id. § 1.214(e). Regulations of this sort are often referred to as "Touhy regulations" in the wake of the Supreme Court's decision in United States ex rel. Touhy v. Ragen, 340 U.S. 462 (1951). "In *Touhy*, the Supreme Court concluded that, because the Attorney General could 'validly withdraw from his subordinates the power to release department papers,' a subordinate who invoked the Attorney General's regulations could not be held in contempt." Watts v. Securities & Exchange Comm'n, 482 F.3d 501, 508 (D.C. Cir. 2007) (quoting Touhy, 340 U.S. at 467-68).

### A.

The Court discerns a slight position shift on the USDA's part. During the telephone conference, the USDA seemed to take the position that the regulation, alone, provided it with all the authority it needed to bar compliance with the subpoena. Subsequent briefing suggests this position has been abandoned, as the USDA now states "Courts have held that neither 5 U.S.C. § 301 nor *Touhy* regulations confer on an agency a privilege or immunity against providing testimony." Suggestions of the United States at 6. In an abundance of caution, and because an understanding of the proper reach of Touhy regulations is important to the issues in this dispute, the Court will address the matter and agree that neither the statute nor the regulation can be so construed.

Prior to 1958 (and on occasions thereafter), federal agencies contended Touhy created a broad executive privilege allowing agencies to decline to respond to subpoenas and other judicial process. E.g., Exxon Shipping Co. v. United States Dep't of the Interior, 34 F.3d 774, 776 (9th Cir. 1994); 26A Wright & Miller § 5682. To curtail such efforts, Congress amended section 301 in 1958 to add the final sentence clarifying that the statute "does not authorize withholding information from the public or limiting

3

the availability of records to the public." Chrysler Corp. v. Brown, 441 U.S. 281, 310 (1979). It seems obvious, then, that regulations promulgated pursuant to the statute cannot serve as a basis for declining to produce records or information.

In the wake of this amendment, courts have uniformly declined to find a privilege – either in the statute or in regulations promulgated thereunder – and have confined the statute's reach to its original purpose of allowing agencies to enact regulations designed to govern daily operations. It allows for "housekeeping rules" and not for the creation of substantive rules; attempts to construe it as permitting agencies greater power are rejected. United States ex rel. O'Keefe v. McDonnell Douglas Corp., 132 F.3d 1252, 1254-55 (8th Cir. 1998) (citing Chrysler Corp., 441 U.S. at 309-10).

The proper scope of Touhy regulations is to prohibit employees of agencies from responding to subpoenas and other discovery requests until appropriate individuals have granted permission for them to do so. This allows the agency to decide whether a privilege should be asserted. Thus, for instance, if a subpoena implicating the attorney client privilege or national security interests were issued to a records custodian, the recipient could not respond – protecting the agency's ability to assert the privilege. In allowing the agency to bear the ultimate responsibility for compliance, Congress has effectively protected the individual from being held in contempt. E.g., Touhy, 340 U.S. at 419; Commonwealth of Puerto Rico v. United States, 490 F.3d 50, 61-62 (1st Cir. 2007); COMSAT Corp. v. National Science Foundation, 190 F.3d 269, 272 n.3 (4th Cir. 1999); Marcoux v. Mid-State Livestock, 66 F.R.D. 573, 578-79 (W.D. Mo. 1975). This prevents individuals from waiving the agency's valid privileges and protects them from punishment for allowing the agency to decide how best to proceed – but it does not create privileges.

B.

The USDA suggests it retains the authority under the Administrative Procedures Act ("APA") to decide not to comply with the summons. Some Courts of Appeal have reached this conclusion. E.g., United States Environmental Protection Agency v.

4

General Elec. Co., 197 F.3d 592, 599 (2d Cir. 1999); COMSAT Corp., 190 F.3d at 274. Most, however, have utilized the APA only as an avenue for waiving sovereign immunity and have required the agency to identify a basis in law for its objections. E.g., Commonwealth of Puerto Rico, 490 F.3d at 62-67; Watts, 482 F.3d at 508-09; Exxon Shipping Co., 34 F.3d at 778. Those objections can be based on a privilege or on the Rules of Civil Procedure; a simple desire to not comply is insufficient.

Here, the USDA suggests the APA grants it broad discretion to decide not to comply and advances several concerns related to litigation strategy as justification. The Court disagrees. Nothing in the APA grants this power or otherwise suggests agencies can enact regulations creating this power. Indeed, such a conclusion would seem to be at odds with the prior discussion regarding 5 U.S.C. § 301. Most importantly, the APA does not prescribe blanket deference to all agency decisions: a court may "compel agency action unlawfully withheld," hold as unlawful agency actions that are "not in accordance with law" or that are "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706. The deference the USDA claims is valid for Congressional delegations of authority, such as matters committed to the agency for decisionmaking or to resolve "gaps" in the legislation that are intended for agency resolution. United States v. Mead Corp, 533 U.S. 218, 227-31, 234-35 (2001); Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843-44 (1984); Edwards v. Federal Aviation Admin., 367 F.3d 764, 767-68 (8th Cir. 2004). Complying with subpoenas does not fall in these traditional areas left to agency deference: it is not a matter that falls uniquely in the USDA's area of expertise, nor is it a matter upon which Congress intended to allow for flexible decisionmaking ability for which an agency is well-suited. Indeed, Congress has established a policy regarding subpoenas as embodied in various statutes and procedural rules – so the USDA's relief, if any, must be gleaned from those provisions.[1]

---

[1] It goes without saying that the USDA's interpretation of the Rules of Civil Procedure is not entitled to deference.

Here, the USDA does not suggest a privilege applies, nor does it suggest compliance will represent an undue burden on the agency.  Instead, its primary concern is that the Plaintiffs may learn information fueling a future lawsuit against the USDA.  This is not a valid basis for resisting a subpoena.  The USDA also argues Plaintiffs have not made the showing required by its regulation – but as already established, 5 U.S.C. § 301 does not grant it the authority to require such a showing.  A non-governmental entity cannot resist a subpoena by contending compliance does not further its interests: there being no such privilege generally, the USDA cannot assert this justification.  The USDA has not presented a privilege or objection recognized in law, so its objections are overruled.

## C.

The USDA alternatively suggests the scope of the depositions should be limited to the issue of personal jurisdiction.  The Court previously refrained from limiting the scope of discovery and sees no reason to alter that course.  Such topical restrictions are usually more trouble than they are worth because they invite the parties to argue over whether particular questions relate to the permissible topic.  Second, as the Court hinted previously, if personal jurisdiction over Defendants is lacking the Court is likely to transfer the case to an appropriate district – meaning Plaintiffs will seek these individuals' depositions regardless of the Court's conclusions.

## III.  CONCLUSION

5 U.S.C. § 301 allows an agency to prohibit employees from responding to subpoenas and other discovery requests to preserve the agency's privileges and other lawful interests, but it does not create any privileges or protections independent of those found elsewhere in law. Here, the USDA has not identified any privileges or burdens recognized in law, so there is no valid basis for excusing compliance.  The subpoenas

6

are enforced, and Verser and Walsh shall appear for their deposition at a time convenient to them and the parties.
IT IS SO ORDERED.

DATE: July 28, 2009

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
UNITED STATES DISTRICT COURT